UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------------- x

BRIAN K. ROGERS,                                              :
                                                             :
                                        Plaintiff,           :        **MEMORANDUM &**
                                                             :        **ORDER GRANTING IN**
            -against-                                        :        **PART AND DENYING IN**
                                                             :        **PART DEFENDANTS'**
CITY OF MIDDLETOWN, OFFICER WILLIAM:                                   **MOTION TO DISMISS**
MAIO, and OFFICER BRENDA WHITE,                              :
                                                             :        3:22-CV-1545 (VDO)
                                        Defendants.          :
---------------------------------------------------------------- x

**VERNON D. OLIVER**, United States District Judge:

Brian K. Rogers ("Plaintiff") brings this action against the City of Middletown ("the City") and Police Officers William Maio and Brenda White, in both their individual and official capacities ("Defendants"). Plaintiff alleges that Defendant Maio injured him during a traffic stop, while Defendant White failed to intervene. Defendants move to dismiss the Second Amended Complaint ("SAC") for a variety of reasons; of relevance here, they argue that (1) Plaintiff improperly served Defendants Maio and White, (2) Supreme Court precedent bars Plaintiff's claims, and (3) the applicable statute of limitations bars Plaintiff's state law claims.

For the reasons set forth below, the Court **grants in part** and **denies in part** Defendants' motion to dismiss.

## I.    BACKGROUND

### A.    Factual Background

The Court accepts as true the factual allegations in the SAC and draws all reasonable inferences in Plaintiff's favor for the purpose of deciding Defendants' motion. On December 6, 2019, Plaintiff was driving near Route 66 and Meadowbrook Drive when he was pulled over by Defendant Maio. (SAC, ECF No. 60, ¶ 8.) Accompanied by Defendant White, Defendant

Maio claimed that Plaintiff was missing a front marker plate. (*Id.* ¶¶ 9, 10.) Defendant Maio then engaged in a verbal confrontation with Plaintiff. (*Id.* ¶ 10.) In Defendant White's presence, Defendant Maio put Plaintiff in handcuffs. (*Id.*) Defendant Maio then violently pulled Plaintiff backwards by the hood of his sweatshirt and kicked his leg. (*Id.* ¶ 11.) Plaintiff's head struck the pavement, and he lost consciousness and suffered serious injuries to the back of his skull. (*Id.*) Defendant Maio also pushed Plaintiff's face into the pavement, causing bruising and swelling, among other injuries. (*Id.* ¶ 12.) Throughout this altercation, Defendant White failed to intervene. (*Id.* ¶ 13.)

### B.    Procedural History

On December 5, 2022, Plaintiff brought suit against the City of Middletown and a group of nine officers employed by the Middletown Police Department. (*See* Compl., ECF No. 1.) Plaintiff brought five claims against all these defendants: (1) violation of 42 U.S.C. § 1981, (2) violation of the Fourteenth Amendment of the United States Constitution, (3) violation of Article One, § 7 of the Connecticut Constitution, (4) negligent infliction of emotional distress, and (5) intentional infliction of emotional distress. (*See* Compl.) Plaintiff filed proof of service on March 20, 2023. (*See* Proof of Service, ECF No. 10, at 1.) Sebastian Milardo, the State Marshall who effected service on the defendants, indicated in his affidavit that he served Defendant Maio "in his official capacity" by leaving two attested copies of the summons and complaint with the Town Clerk. (*Id.*) He further indicated that he served Defendant White "in her official capacity [and] in her individual capacity" by leaving two attested copies of the summons and complaint in the hands of a Police Officer Passacantanto, who was "authorized to accept service[.]" (*Id.* at 2.) Plaintiff filed additional proof on March 23, 2023. (Second Proof of Service, ECF No. 12, at 1.) In this document, Marshal Milardo stated that he served

Defendant Maio in his "individual capacity" by leaving a copy of the summons and complaint with Police Officer Pelligrini, also "authorized to accept service[.]" (*Id.*)

Defendants moved to dismiss the complaint on May 10, 2023. (*See* ECF No. 17.) Plaintiff then filed his First Amended Complaint ("FAC"), prompting the Court to deny as moot Defendants' motion to dismiss. (*See* ECF No. 31.) Defendants moved to dismiss the FAC on June 21, 2023. (*See* ECF No. 32.) Plaintiff, in turn, filed a motion to amend the FAC on August 3, 2023. (*See* ECF No. 38.) The Court granted Plaintiff's motion on February 26, 2024, and denied as moot Defendants' motion to dismiss. (*See* ECF No. 59.)

In Plaintiff's Second Amended Complaint ("SAC"), Plaintiff brought seven claims: (1) violation of 42 U.S.C. § 1983 against Defendant Maio, (2) violation of 42 U.S.C. § 1983 against Defendant White, (3) violation of Article One, § 7 of the Connecticut Constitution, against Defendants Maio and White, (4) intentional infliction of emotional distress against Defendants Maio and White, (5) assault against Defendants Maio and White, (6) battery against Defendant Maio, and (7) an indemnification claim against the City. (*See generally* SAC.) Defendants moved to dismiss the SAC on March 29, 2024. (Def. Mot., ECF No. 63.) Plaintiff opposed the motion on May 3, 2024, and Defendants filed their reply on May 17, 2024. (Pl. Opp., ECF No. 70; Reply, ECF No. 72.)

## II.    LEGAL STANDARD

### A.    Motion to Dismiss for Insufficient Service of Process and Lack of Personal Jurisdiction

"Valid service is required before a federal court may exercise personal jurisdiction over a defendant." *Darowski v. Wojewoda*, No. 15-CV-00803, 2016 WL 4179840, at *2 (D. Conn. Aug. 7, 2016). A court evaluating a Rule 12(b)(2) motion will consider "insufficient

service of process as an interrelated ground on which to dismiss a case for lack of personal

jurisdiction." *Perez v. Conn. Dept. of Corr. Parole Div.*, No. 13-CV-150 (JCH), 2013 WL

4760955, at *2 (D. Conn. Sept. 4, 2013) (citing Fed. R. Civ. P. 12(b)(2) and 12(b)(5)); *see also*

*Davis v. Mara,* 587 F. Supp. 2d 422, 424 (D. Conn. 2008); 5B Charles Alan Wright et al.,

Federal Practice and Procedure § 1353 (3d ed. 2013) ("Although the questions of personal

jurisdiction and service of process are closely interrelated, service of process is merely the

means by which a federal court gives notice to the defendant and asserts jurisdiction over him;

the actual existence of personal jurisdiction should be challenged by a Rule 12(b)(2) motion."

(footnote omitted)).

"[I]t falls to the plaintiff to prove that the court has jurisdiction over the defendant."

*Perez*, 2013 WL 4760955, at *2. A court deciding a motion to dismiss for lack of personal

jurisdiction has significant leeway. *See id*. "It may determine the motion on the basis of

affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an

evidentiary hearing on the merits of the motion." *Marine Midland Bank, N.A. v. Miller*, 664

F.2d 899, 904 (2d Cir. 1981). "Where . . . a court relies on pleadings and affidavits, rather than

conducting a 'full-blown evidentiary hearing,' the plaintiff need only make a *prima facie*

showing that the court possesses personal jurisdiction over the defendant." *DiStefano v.*

*Carozzi North America, Inc.*, 286 F.3d 81, 84 (2d Cir. 2001). "A plaintiff can make this

showing through his own affidavits and supporting materials containing an averment of facts

that, if credited . . . , would suffice to establish jurisdiction over the defendants." *Whitaker v.*

*American Telecasting, Inc.,* 261 F.3d 196, 208 (2d Cir. 2008) (cleaned up). "[W]here the issue

is addressed on affidavits, all allegations are construed in the light most favorable to the

plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting

presentation by the moving party." *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993).

## III.    DISCUSSION

Defendants raise a panoply of arguments in their motion to dismiss. Because Plaintiff makes certain concessions in his opposition brief, the Court need not address all of Defendants' arguments. (*See* Pl. Opp. at 4, 25.) Of relevance here, Defendants ask this Court to dismiss claims due to insufficient service of process against (1) Defendant Maio in his individual capacity and (2) Defendant White in both her individual and official capacities. In addition, they argue that Supreme Court precedent and the applicable statute of limitations mandate dismissal of the SAC.

### A.    Service of Process Issues

Defendants ask the Court to dismiss Plaintiff's claims against (1) Defendant Maio in his individual capacity and (2) Defendant White in both her individual and official capacities due to insufficient service of process. In Defendants' view, Plaintiff did not effect service properly when Marshal Milardo left copies of the complaint and summons with officers on duty at the Middletown Police Department. (*See* Def. Mem. at 10–13.) Defendants further note that Defendant White was no longer employed by the Middletown Police Department at this time. (*See id*. at 11.) In response, Plaintiff suggests that the officers on duty were agents "authorized by appointment of law" insofar as the Middletown Police Chief "agreed to have the duty clerk officer . . . accept service" on behalf of the two officers. (Pl. Opp. at 7, 11.) In the alternative, Plaintiff asks this Court to extend the deadline by which he must complete service, either by finding "good cause" for the insufficient service or, in the absence of good cause, by exercising its discretion. (Pl. Opp. at 8–9.)

Federal Rule of Civil Procedure 4 governs service of process on individuals. An individual may be served by "delivering a copy of the summons and of the complaint to the individual personally," "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there," or "delivering a copy of each to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(2). In addition, an individual may be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located[.]" *Id.* 4(e)(1). Connecticut state law allows a party to effect personal in-hand service or leave an attested copy of the summons and complaint at the other party's usual place of abode. Conn. Gen. Stat. §§ 52-54, 52-57(a). A plaintiff may also serve a municipal employee "in a cause of action arising from the employee's duties or employment" by providing two copies of the documents to the clerk of the town, city, or borough. *Id*. § 52-57(b)(7).

As a preliminary matter, the Court notes that Defendants do not appear to challenge whether Defendant Maio was properly served in his *official capacity*. Indeed, Defendants note that service was made upon Defendant Maio in his official capacity "by leaving a copy of the Summons and Complaint with Town Clerk Ashley Flynn-Natale." (Def. Mem. at 9.) Though Defendants state—ambiguously—that "neither [Defendant Maio nor Defendant White] has actually been served by lawful means," they go on to ask the Court to dismiss "claims against William Maio in his individual capacity and Brenda White in her official and individual capacities." (*Id*. at 10, 14.) The Court concludes that Defendant Maio was properly served in his official capacity.

In consequence, the Court finds that Defendant Maio was correctly served in his official *and* individual capacities. Plaintiff and Defendants assume that Plaintiff was required to serve

Defendant Maio twice—once in his official capacity and once in his individual capacity. However, the law does not support such an assumption. In *Field v. City of Hartford*, the district court interpreted Conn. Gen. Stat. § 52-57(b), looking to the language of the statute and its legislative history. No. 18-CV-1803 (JAM), 2019 WL 4279011, at *3–6 (D. Conn. Sept. 9, 2019). Despite the Connecticut Supreme Court's silence on this issue, the district court concluded that "when a plaintiff serves process against a municipal employee in accordance with the requirements of Conn. Gen. Stat. § 52-57(b)(7), the plaintiff has served that employee in both the employee's official and personal capacity." *Field*, 2019 WL 4279011, at *6; *see also Cane v. City of Hartford*, No. CV206063130S, 2022 WL 620833 (Conn. Super. Ct. Feb. 4, 2022) ("Service under § 52-57(b)(7) is an optional alternative to personal or abode service under General Statutes § 52-57(a).").[1] This Court concludes that proper service on Defendant Maio in his official capacity is "sufficient to sustain" the suit against him in both his individual and official capacities. *See El Ex-Relatione Dawes v. Whitehead*, No. 18-CV-02033 (CSH), 2019 WL 5394578, at *4 n.6 (D. Conn. Oct. 22, 2019).

The Court turns to the next issue: whether Plaintiff properly served Defendant White. In Plaintiff's proof of service, filed on the docket, Marshal Milardo attests that he served Defendant White "by leaving a true and attested copy in her official capacity and a true and

---

[1] In contract, district courts have required plaintiffs suing *state* employees (not municipal employees) to effect service twice, once in the employee's individual capacity and once in the employee's official capacity. *See Eiden v. McCarthy*, 531 F. Supp. 2d 333, 344 (D. Conn. 2008) (determining that "[s]ervice on [a] defendant . . . through the Attorney General . . . is insufficient to subject her to suit in her individual capacity"). Section 52-64 governs service of process in actions against state employees. That section, unlike section 52-57, draws a distinction between service "for official-capacity purposes and personal-capacity purposes." *Field*, 2019 WL 4279011, at *4; *see also Bogle-Assegai v. Connecticut*, 470 F.3d 498, 507–08 (2d Cir. 2006) (affirming dismissal of individual-capacity claims against defendants employed by the *state* because plaintiff served them in their official capacity but did not effect personal service).

attested copy in her individual capacity of the original Summons & Complaint, with and in the hands of the Police department duty desk officer, [O]fficer Passacantanto, authorized to accept service[.]" (Proof of Service at 2.) As to service for official-capacity purposes, not only did Plaintiff fail to serve Defendant White in accordance with Conn. Gen. Stat. § 52-57(b)(7), but the relevant statute did not even apply to Defendant White, who was no longer employed with the Middletown Police Department by that point. *See Cane*, 202 WL 620833, at *3–4 (concluding that the term "employee" in Conn. Gen. Stat. § 52-57(b)(7) could not encompass former employees).

As to service for individual-capacity purposes, Plaintiff had three options: abode service, personal service, and service on an authorized agent. *See* Fed. R. Civ. P. 4(e); Conn. Gen. Stat. § 52-54. Plaintiff suggests that Officer Passacantanto was an "authorized agent" for the purpose of service. (Pl. Opp. at 11.) The Court disagrees. "[G]ood-faith reliance on apparent authority" suffices for the purposes of Rule 4(e)(2)(C) of the Federal Rules of Civil Procedure *only* if the principal has "held out another person as possessing certain authority, not where the agent has done so." *Parfitt Way Mgmt. Corp. v. GSM By Nomad, LLC*, No. 27-CV-0299 (GTS), 2018 WL 2364287, at *5 n.3 (N.D.N.Y. May 24, 2018). Plaintiff neither explains nor shows how Defendant White "held out" Officer Passacantanto as possessing authority to receive service on her behalf. *See, e.g., Dorrough v. Harbor Securities, LLC*., No. 99-CV-7589 (ILG), 2002 WL 1467745, at *4 n.6 (E.D.N.Y. May 10, 2002) (finding "no evidence" that a defendant explicitly or implicitly authorized his attorneys to accept service for him). Instead, Plaintiff alleges that the Middletown Police Chief "agreed to accept service" in his conversation with Marshal Milardo. (Pl. Opp. at 11.) Indeed, if Defendant White no longer worked for the Middletown Police Department, then she would hardly have authorized

8

her former supervisor to accept service on her behalf. Because Plaintiff did not effect abode service, personal service, or service on an authorized agent, the Court concludes that Defendant White was not properly served pursuant to federal or Connecticut state law.

That said, a court must extend a plaintiff's service deadline upon a showing of "good cause." Fed. R. Civ. P. 4(m). In general, good cause is found "only in exceptional circumstances," when a plaintiff's failure to effect service of process in a timely fashion resulted from "circumstances beyond [his] control." *Ping Chen ex rel. U.S. v. EMSL Analytical, Inc*., 966 F. Supp. 2d 282, 306 (S.D.N.Y. 2013). Courts typically consider "(1) the reasonableness and diligence of Plaintiff's efforts to serve, and (2) the prejudice to the Moving Defendants from the delay." *Trs. of the United Plant & Prod. Workers Local 175 Benefits Fund v. Mana Constr. Grp*., No. 18-CV-4269 (ARL), 2021 WL 4150803, at *3 (E.D.N.Y. July 30, 2021) (internal citations omitted). "An attorney's inadvertence, neglect, mistake or misplaced reliance does not constitute good cause." *E. Refractories Co. v. Forty Eight Insulations, Inc*., 187 F.R.D. 503, 505 (S.D.N.Y. 1999).

The Court concludes that Plaintiff has not made a showing of good cause. Though Plaintiff contends that Marshal Milardo detrimentally relied on the Middletown Police Chief's representations (Pl. Opp. at 11), Plaintiff did not make reasonable efforts to serve Defendant White. Marshal Milardo simply dropped off copies of the summons and complaint at Defendant White's former workplace. Even if the Police Chief said that he was authorized to accept service on her behalf, Plaintiff bears the responsibility of effecting service in conformity with state and federal law. This is a "clear example" of misplaced reliance on the part of Plaintiff's counsel. *See Russo v. Estee Lauder Corp*., No. 08-CV-3965 (TCP), 2010 WL 11629552, at *6 (E.D.N.Y. July 27, 2010) (finding that a plaintiff did not make reasonable

efforts to serve the defendant when plaintiff simply relied on representations made by a company employee).[2] "It is not an unusual or burdensome expectation that an attorney place a telephone call or conduct minimal research based on current information to ascertain a party's actual location prior to attempting service." *Id.*; *see also LaNasa v. Stiene*, No. 22-CV-5686 (KAM), 2024 WL 1648001 (E.D.N.Y. Apr. 17, 2024) ("[A] mistake by an attorney is not good cause[.]"). Plaintiff, his counsel, and the process server made little effort, and certainly not a reasonable effort, to serve Defendant White in this action.

A court that declines to extend the service deadline in accordance with Rule 4(m)'s good cause provision may nonetheless exercise its discretion to grant such an extension. *See* Fed. R. Civ. P. 4(m). A court will typically consider "(1) whether the applicable statute of limitations would bar the refiled action; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant had attempted to conceal the defect in service; and (4) whether the defendant would be prejudiced by the granting of plaintiff's request for relief from the provision." *Sauer v. Town of Cornwall*, No. 20-CV-4881 (NSR), 2021 WL 4066848, at *4 (S.D.N.Y. Sept. 7, 2021). Certain courts require the "balance of hardships" to "clearly favor the Plaintiff[.]" *Kogan v. Facebook, Inc.*, 334 F.R.D. 393, 404 (S.D.N.Y. 2020) (quoting *Barbosa v. City of New York*, No. 16-CV-7340 (LTS), 2018 WL 4625620, at *3 (S.D.N.Y. Sept. 26, 2018)).

---

[2] Conversely, in *Kamiel v. Hai Street Kitchen & Co. LLC*, a district court concluded that a plaintiff had made reasonable efforts to serve the defendant, thereby satisfying the good cause standard. No. 19-CV-5336 (PAE), 2022 WL 1591580, at *5 (S.D.N.Y. May 19, 2022). The defendant had worked at the location as recently as two months ago; the name of the company at the address remained unchanged; and the recipient of service "expressly" told the process server that the defendant still worked at the location in question. *Id.* The instant case involves no similar factors.

The Court weighs these factors and declines to grant a discretionary extension to Plaintiff. As to the first factor, the applicable statute of limitations would bar the refiled action. Parties do not dispute that Conn. Gen. Stat. § 52-577 sets forth the applicable statute of limitations, requiring a plaintiff to initiate an action founded upon a tort within three years from the date of the act. (*See* Def. Mem. at 28, Pl. Opp. at 23.) Considering Governor Lamont's suspension of Connecticut statutes of limitations, the Court concludes that the statute of limitations expired on November 18, 2023. *See Sakon v. Johnson*, No. 23-CV-107 (AWT), 2024 WL 1176571, at *3 (D. Conn. Mar. 19, 2024) (determining that Governor Lamont extended the Connecticut statutes of limitations by 347 days). Because Plaintiff alleges that the altercation occurred on December 6, 2019, the applicable statute of limitations would bar the refiled action. This factor weighs "very heavily" in Plaintiff's favor. *Dervishi v. Stamford Bd. of Educ.*, No. 21-CV-1184 (SVN), 2022 WL 884234, at *6 (D. Conn. Mar. 25, 2022); *see also Beauvoir v. U.S. Secret Service*, 234 F.R.D. 55, 58 (E.D.N.Y. 2006) ("[T]his factor alone may be sufficient to justify extending the time for service.")

As to the second factor, however, Plaintiff at no point argues that Defendant White had actual notice of the claims asserted in the complaint. The Court cannot assume that Defendant White received notice when Marshal Milardo left copies of the summons and complaint at her former place of employment. *Cf. Jordan v. Forfeiture Support Assocs.*, 928 F. Supp. 2d 588, 599 (E.D.N.Y. 2013) (explaining that defendant had actual notice of action where plaintiff failed to comply with service requirements but sent summons and complaint by certified mail). Because "[n]othing in the papers suggests" that Defendant White had actual notice, the Court finds that this factor favors Defendants. *See John v. City of Bridgeport*, 309 F.R.D. 149, 155 (D. Conn. 2015).

As to the third factor, Defendants have not attempted to conceal the defect in service. Defendants raised this issue in their motion to dismiss the original complaint. (*See* ECF No. 17-1 at 5–9.) This factor therefore weighs against extending the service deadline. *See Dervishi*, 2022 WL 884234, at \*7.

The fourth and final factor favors Defendants, who argue that an extension would be "highly prejudicial[.]" (Reply at 3.) Though they provide little in the way of explanation, the Court notes that Plaintiff was first notified of these service issues on May 10, 2023, when Defendants moved to dismiss Plaintiff's initial complaint. (ECF No. 17-1 at 7–8.) Plaintiff, however, failed to remedy these issues. "[S]ome prejudice may accrue" to Defendants due to this significant delay. *Etheredge-Brown v. Am. Media, Inc.*, No. 13-CV-1982 (JPO), 2015 WL 4877298, at \*4 (S.D.N.Y. Aug. 14, 2015) (finding that a "substantial delay in service" of over 400 days caused defendant some prejudice). Plaintiff suggests that he has "already and continues to request an extension of time under Rule 4(m)." (Pl. Opp. at 11.) But the Court has reviewed the docket and found no evidence of any request or motion for an extension of time. *See Freeman v. United States*, 166 F. Supp. 3d 215, 221 (D. Conn. 2016) (declining to extend deadline when plaintiffs never filed a motion for an extension of time) (overruled in part on other grounds by *Corley v. United States*, 11 F.4th 79, 86–87 (2d Cir. 2021)). Ultimately, though one factor favors Plaintiff, the "overlapping equitable considerations" weigh against an extension of time. *See Zapata v. City of New York*, 502 F.3d 192, 197 (2d Cir. 2007). Plaintiff has shown a "lack of diligence," *see Barbosa*, 2018 WL 4625620, at \*3, as evidenced by his failure to remedy the service issues and his failure to file proof of service on the docket in a timely fashion. (*See* ECF No. 9.)

In sum, the Court concludes that Plaintiff properly served Defendant Maio but failed to serve Defendant White in accordance with federal and state law. Plaintiff has not made a showing of good cause, and the Court declines to extend the service deadline. *See* Fed. R. Civ. P. 4(m). The Court dismisses the claims against Defendant White for insufficient service of process. *See id*. 12(b)(5).

### B.     *Heck v. Humphrey*

Defendants argue that Plaintiff "seeks no more than to impermissibly invalidate his conviction" for interfering with an officer or resisting arrest. (Def. Mem. at 22.) In their view, Plaintiff's claims against Defendants Maio and White constitute a "circuitous effort" that "effectively challenges the validity of [Plaintiff's] conviction." (*Id*. at 23.) They contend that *Heck v. Humphrey* prohibits this Court from entertaining these claims because they would "necessarily imply the invalidity" of Plaintiff's conviction. 512 U.S. 477, 487 (1994). In response, Plaintiff challenges the contention that these claims would necessarily invalidate Plaintiff's conviction—Plaintiff notes that his conviction resulted from a *nolo contendere* plea, not a criminal trial. Plaintiff distinguishes the personal injury damages that he seeks from the damages at issue in *Heck*. (Pl. Opp. at 18–20.)

*Heck* sits at the intersection of civil tort claims and criminal convictions. 512 U.S. at 486. While serving a sentence for voluntary manslaughter, petitioner brought a § 1983 damages claim against state prosecutors and investigators—he alleged that respondents had engaged in unlawful investigative tactics. *Id*. at 479. Deferring to the "hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments," the Court concluded that petitioner's claim was not cognizable under § 1983. *Id*. at 486. The Court held that a plaintiff may only recover damages "for [an] allegedly

13

unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" if the plaintiff proves that the conviction or sentence has been invalidated. *Id*. at 486–87.[3] Thus, a district court must first determine whether a judgment for the plaintiff would "necessarily imply the invalidity of his conviction or sentence[.]" *Id*. at 487. If it would, the plaintiff must prove that his conviction or sentence has been invalidated. *Id*.

The parties fail to make use of the District's case law. In *Sanabria v. Martins*, Judge Arterton analyzed whether *Heck* barred a plaintiff's claims. 568 F. Supp. 2d 220, 223 (D. Conn. 2008). Sanabria, like Rogers, pleaded guilty to one count of interfering with a police officer in violation of Connecticut General Statutes § 53a-167a(a); he later brought a civil action against the police officer who performed the arrest, alleging violations of his constitutional rights, as well as assault and battery. *Sanabria*, 568 F. Supp. 2d at 221–22. Because *Heck* does not apply "where a § 1983 plaintiff was never incarcerated for a prior offense and thus had no opportunity to raise a constitutional challenge via habeas corpus," the court determined that Sanabria should "be permitted to pursue his § 1983 claim in the district court unless principles of res judicata or collateral estoppel preclude his suit." *Sanabria*, 568 F. Supp. 2d at 224 (citing *Leather v. Eyck*, 180 F.3d 420, 424 (2d Cir. 1999)). Though the court noted that "Connecticut law is not perfectly clear on the application of preclusion principles to a prior guilty plea," it

---

[3] The Court explained in a footnote that a plaintiff could not bring a § 1983 claim, seeking damages for a violation of his Fourth Amendment right to be free from unreasonable seizures, should he have been convicted of "resisting arrest, defined as intentionally preventing a peace officer from effecting a lawful arrest." *Id*. at 486 n.6.

held that Sanabria could not contest the three elements of his offense.[4] *Sanabria*, 568 F. Supp. 2d at 225. Ultimately, however, the court found that Sanabria's allegations were not "wholly congruent with the facts determined by his guilty plea." *Id*. at 226. Because Sanabria could show that the officers used excessive force against him *after* he completed the offense at issue, the court allowed him to proceed with his state and federal claims. *Id.*

In contrast, in *Sampson v. Pia*, the district court concluded that *Heck* barred a plaintiff's excessive force claim. No. 15-CV-359 (SRU), 2017 WL 1138127, at *8 (D. Conn. Mar. 27, 2017). A jury had found the plaintiff (then defendant) guilty of interfering with a police officer. *Id*. at *3. The court paid close attention to the jury instructions on the crime of interfering with a police officer: "If you find that the force used by [Pia] was not reasonable, you will find that Hartford Police Detective Pia was not acting within the performance of his official duties while attempting to arrest the defendant." *Id*. at *7. The jury received no instructions on the "possibility that [the police officer] acted at times within the performance of his official duties and at other times outside the scope of such duties." *Id*. In consequence, the court concluded that if plaintiff were to prevail on his excessive force claim, it would "negate the jury finding that [the officer] used reasonable force." *Id*. at *8.

Here, *Heck* cannot apply to Plaintiff's claims. Just as Sanabria was not incarcerated following his guilty plea, Plaintiff was never incarcerated pursuant to his conviction. *See Sanabria*, 568 F. Supp. 2d at 224. Defendants append to their memorandum a "Conviction

---

[4] Though the *Sanabria* court looked at the preclusive effect of the plaintiff's plea, the court nevertheless drew an analogy to the *Heck* rule. *See Sanabria*, 568 F. Supp. 2d at 226.

Case Detail," a print-out from the Connecticut judiciary's website.[5] The document indicates

that a verdict was entered on December 1, 2022: no fine was imposed, and Plaintiff was

sentenced to "Unconditional Discharge." The Court can only conclude that Plaintiff was *not*

*incarcerated* following the conviction—thus, *Heck* is not a bar to the Plaintiff's § 1983 action.[6]

*See Leather*, 180 F.3d at 424.

This Court must instead analyze the preclusive effect of Plaintiff's conviction. It need

not take stock of the relevant Connecticut case law; the *Sanabria* court already grappled with

this difficult question. As noted above, it held that the plaintiff could not challenge facts

necessary to establish the elements of the state law offense: "(1) interference with an officer,

(2) with intent to so interfere, (3) while the officer is performing his or her duties." *Sanabria*,

568 F. Supp. 2d at 226. Unlike Sanabria, Plaintiff in the present case entered a *nolo contendere*

plea, but this Court need not compare the preclusive effect of a *nolo contendere* plea to that of

---

[5] This Court can take judicial notice of this document. *See United State v. Jean-Marie*, No. 23-CR-00036 (KAD), 2023 WL 2384116, at *2 n.2 (D. Conn. Mar. 6, 2023). In addition, in evaluating a motion to dismiss, the Court may consider matters of which judicial notice may be taken. *See Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

[6] Even if *Heck* provided the correct analytical framework, case law does not support Defendants' argument. In *Sullivan v. Gagnier*, the Second Circuit concluded that "there is no inherent conflict between a conviction for resisting arrest or harassment of a police officer and a finding that the police officers used excessive force in effectuating the arrest." 225 F.3d 161 (2d Cir. 2000). Though Defendants cite *Hamlin v. McMahon* for the proposition that *Heck* applies to convictions that flow from guilty and *nolo contendere* pleas, the *Hamlin* court noted that "[t]he rule of *Heck v. Humphrey* does not ordinarily bar a claim that the police used excessive force against a civil rights plaintiff, even if the excessive force occurred in the midst of an arrest that eventually led to a successful conviction." No. 17-CV-1520 (RMS), 2019 WL 6619342, at *7 (D. Conn. Dec. 5, 2019) (citing *McKay v. East Hartford Police Dept.*, 16-CV-1954 (JAM), 2017 WL 4247383, at *3 (D. Conn. Sept. 25, 2017)). And the *McKay* court reasoned that "a finding that the police used excessive force is collateral to the grounds for conviction[.]" 2017 WL 4247383, at *3.

a guilty plea.[7] Even assuming, *arguendo*, that Plaintiff cannot challenge facts necessary to establish the three elements of the crime, the Court concludes that Plaintiff's allegations are not "wholly congruent" with the facts determined by his plea. *See id.* Plaintiff could prove that Defendant Maio used excessive force against him or assaulted him *after* he completed the offense in question. Indeed, the Second Amended Complaint suggests that Defendant Maio kicked Plaintiff's leg and ground his face into the road after putting him in handcuffs. (SAC ¶¶ 11–12.) By "analogy to the *Heck* rule," the Court finds that Plaintiff can prevail without "negat[ing] an element of the offense." *Sanabria*, 568 F. Supp. 2d at 226.

The present case bears little resemblance to *Sampson*. Here, Plaintiff entered a *nolo contendere* plea; he was not convicted by a jury. In *Sampson*, that "jury was forced to determine whether [the officer] was acting within the scope of his duties during the entire interaction[.]" *Sampson*, 2017 WL 1138127, at *7. Here, however, it does not follow from Plaintiff's plea that Defendant Maio was acting within the scope of his duties "during the entire interaction[.]" *See id*. At this stage in the litigation, Plaintiff's plea does not preclude him from arguing that Defendants used excessive force during the arrest.

In sum, not only is *Heck* inapplicable to Plaintiff's claims, but Plaintiff's conviction does not preclude him from bringing these claims. Defendants continuously emphasize a conflict between the excessive force claims and Plaintiff's state court conviction. (*See* Reply at 6–7.) For the reasons explained above, the Court rejects the notion of a conflict. Defendants

---

[7] The Court nevertheless notes that in Connecticut "the general rule is that a plea of nolo contendere in a criminal case is inadmissible in a subsequent proceeding to prove the occurrence of a criminal act." *Allstate Ins. Co. v. Tenn*, 342 Conn. 292, 300 (2022). A defendant who enters a *nolo contendere* plea is "not estopped from denying the facts to which he pleaded . . . in a subsequent judicial civil proceeding." *State v. Bridgett*, 3 Conn. Cir. 206, 208–09 (1965).

Maio and White may well have acted "within their official duties" as they arrested Plaintiff in December 2019; however, they may also have used an unconstitutional quantum of force after Plaintiff resisted arrest. *See Sanabria*, 568 F. Supp. 2d at 226.

### C.    Statute of Limitations

Defendants next argue that the relevant statute of limitations bars Plaintiff's state law claims against Defendants Maio and White. Indeed, the parties agree that Conn. Gen. Stat. § 52-577 provides the applicable statute of limitations. (*See* Def. Mem. at 31, Pl. Opp. at 23.) The statute states that "[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." Conn. Gen. Stat. § 52-577. Plaintiff does not appear to challenge Defendants' contention that an action is only "commenced" under Connecticut law when plaintiff serves a defendant. (*See* Def. Mem. at 28.)[8]

As explained above, however, the Court concludes that Plaintiff properly served Defendant Maio. When Marshal Milardo left a copy of the complaint and summons with the Town Clerk Ashley Flynn-Natale, Plaintiff effected service of process pursuant to Conn. Gen. Stat. § 52-57(b)(7). (Def. Mem. at 9.) Thus, assuming for argument's sake that an action is only "commenced" under Connecticut law when a defendant is properly served, Plaintiff commenced the action against Defendant Maio on March 3, 2023, when Marshal Milardo served him in accordance with Connecticut state law. (Proof of Service at 1.) Because Defendants concede that Governor Lamont's executive orders extended the relevant statute of limitations by almost a year, the Court finds that the statutory period established by Conn. Gen.

---

[8] Plaintiff instead argues that the state law claims in the SAC are not time-barred because (1) Governor Lamont extended the relevant statutes of limitations in 2020 and 2021, and (2) the claims "relate back" under Federal Rule of Civil Procedure 15(c)(1)(B) to the claims in the Plaintiff's initial complaint. Plaintiff does not address or rebut the substance of Defendants' argument.

Stat. § 52-577 does not bar Plaintiff's claims against Defendant Maio. (*See* Def. Mem. at 32.)
The statute of limitations expired on November 18, 2023, months after Plaintiff properly
served him. *See Sakon*, 2024 WL 1176571, at *3.

Finally, because the Court dismisses Plaintiff's claims against Defendant White for
insufficient service of process, the Court need not analyze whether Plaintiff's state law claims
against Defendant White are also time-barred.

### D.      Defendants' Remaining Arguments and Plaintiff's Concessions

Defendants argue that Plaintiff's § 1983 claims against Defendants Maio and White in
their official capacities are "duplicative" of claims brought against the City of Middletown.
(Def. Mem. at 14–16.) In his opposition brief, Plaintiff concedes that he brings claims against
Defendants Maio and White only in their individual capacities. Plaintiff further clarifies that
he does not bring a § 1983 claim against the City—in consequence, the Court needs not address
many of Defendants' arguments.

Defendants also ask the Court to dismiss Plaintiff's indemnification claim against the
City of Middletown for a variety of reasons. (*See* Def. Mem. at 34–40.) Of relevance here, the
indemnification statute, Conn. Gen. Stat. § 7-465, requires a plaintiff to provide "written notice
of the intention to commence such action" to the clerk of the municipality. Plaintiff concedes
that he failed to provide the requisite written notice and suggests that "dismissal of [the
indemnification claim] might be warranted." (Pl. Opp. at 25.) The Court therefore dismisses
Count Seven, the only claim against the City in the SAC.

## IV.     CONCLUSION

For the reasons set forth above, the Court **DENIES** the motion to dismiss (ECF No. 63)

Plaintiff's claims against Defendant Maio. The Court **GRANTS** the motion to dismiss

Plaintiff's claims against Defendant White and the City.

Defendant Maio shall file an answer to the operative complaint within **14 days** of this

order. The Clerk is respectfully directed to terminate Brenda White and the City of Middletown

from the docket.

**SO ORDERED.**

Hartford, Connecticut
November 18, 2024

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge